# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information associated with mycaseydances@yahoo.com,<br>discountfleacontrol@yahoo.com, discfc1@yahoo.com,<br>and bounceparky@yahoo.com<br>that is stored at premises controlled by, Yahoo! Inc. | )<br>)<br>)<br>)<br>)<br>)    Case No. 1:24mj28 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A fully incorporated by reference herein

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B fully incorporated by reference herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 7 U.S.C. Section 136 et seq. | violations of Federal Insecticide, Fungicide and Rodenticide Act |
| 18 U.S.C. Sections 1341, 1343 | Mail Fraud, Wire Fraud |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Ryan Baker

*Applicant's signature*

Ryan Baker, Special Agent, EPA-CID

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 01/25/24

City and state: Greensboro, NC

*Judge's signature*

The Hon. L. Patrick Auld, United States Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ryan Baker, being duly sworn and deposed, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with mycaseydances@yahoo.com, discountfleacontrol@yahoo.com, discfc1@yahoo.com, and bounceparky@yahoo.com ("SUBJECT ACCOUNTS") that is stored at premises controlled by Yahoo! Inc., an email provider headquartered at 701 First Avenue, Sunnyvale, California, 94089. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo! Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the United States Environmental Protection Agency ("EPA"), Criminal Investigation Division ("CID"). I have been so employed since approximately February 2021. As part of my training to become a Special Agent, I attended the Federal Law Enforcement Training Center in Glynco, Georgia, and completed the twelve-week Basic Criminal Investigator Training Program. I have also completed the nine-week EPA-CID Investigator Basic Training Program where I received training in investigating violations of the Federal environmental and Title 18 laws and have investigated numerous pollution-related offenses and permit violations. I have attended additional training courses on techniques for investigating environmental crimes and participated in the execution of multiple Federal search

1

warrants. Prior to my current position, I was a Special Agent with the U.S. Department of Energy, Office of Inspector General. I have a Bachelor of Science degree, and a Master of Science degree both with concentration in criminal justice. I have attended numerous training courses on techniques for investigating environmental crimes. From 2007-2010, I was an Investigator with the United States Department of Agriculture. I began my career as a Deputy with the York County Sheriff's Office in York, South Carolina.

3.    As part of my duties as an EPA-CID Special Agent, I investigate criminal violations of environmental laws, including the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, as well as violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud). I am duly authorized by 18 U.S.C. § 3063, to carry firearms, to execute and serve any warrant or other process issued under the authority of the United States, and to make arrests without warrants for any offense committed in my presence or for any felony offense that I have probable cause to believe the person to be arrested has committed or is committing.

4.    The statements made in this Affidavit are based on my personal knowledge; my training, education, and experience; and information that I have received from regulatory personnel and witnesses. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of criminal violations of the criminal violations will be found in the SUBJECT ACCOUNTS.

5.    Based upon the investigation as described in more detail below, I submit there is probable cause to believe that MELISSA DAWN COX violated 7 U.S.C. § 136 *et seq.* by

2

distributing and selling an unregistered pesticide in violation of 7 U.S.C. §§ 136j(A)(1)(A) and 136l(b)(1)(A), and by selling and distributing to other persons a pesticide that was "misbranded," that is, a product bearing a false and misleading label, in violation of 7 U.S.C. § 136j(a)(1)(E). I further submit there is also probable cause to believe that MELISSA DAWN COX devised a scheme to obtain money from other persons by means of false or fraudulent pretenses, that is, through the sale of falsely labeled product, and that she used the mail in furtherance of her scheme and also caused money and other things to be transmitted by wire in interstate and foreign commerce, in violation of 18 U.S.C. §§ 1341 and 1343 respectively. I further believe, for the reasons set forth herein, that evidence, instrumentalities, and fruits of such violations will be found on the SUBJECT ACCOUNTS.

6.      Preservation letters were sent to Yahoo, Inc. on April 28, 2023, and on December 4, 2023. In general, an email that is sent to a Yahoo, Inc. subscriber is stored in the subscriber's "mailbox" on Yahoo, Inc. servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Yahoo, Inc. servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Yahoo's servers for a certain period of time.

## STATUTORY AND REGULATORY BACKGROUND

### FEDERAL INSECTICIDE, FUNGICIDE, AND RODENTICIDE ACT

7.      The United State Environmental Protections Agency ("EPA") is the agency of the United States Government responsible for enforcing the provisions of the FIFRA, 7 U.S.C. § 136 *et seq*. The primary purpose of the FIFRA is to regulate the sale, distribution, and use of pesticides. FIFRA is enforced by the EPA primarily through the process of registration.  EPA

3

will only register a pesticide active ingredient or pesticide product if, inter alia, "it will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(D).

8.      FIFRA grants States much latitude in regulating pesticides at the state level, provided state law meets or exceeds the federal requirements. In 1977, EPA approved North Carolina's plan for the certification of commercial and private applicators of restricted use pesticides. 42 Fed. Reg. 55904. However, EPA maintains its authority to act and enforce FIFRA with no constraints.

9.      North Carolina Department of Agriculture and Consumer Services ("NCDA&CS") regulates the pesticide program in North Carolina. NCDA&CS's administration and enforcement process includes the issuance of registered pesticides numbers to pesticides being produced in the state.

10.      A "pesticide" is any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest. 7 U.S.C. § 136(u); 40 C.F.R. § 152.3. The term "pest" is broadly defined to include, among other things, viruses, bacteria, or other micro-organisms. 7 U.S.C. § 136(t).

11.      An "insecticide" is a pesticide that targets insects. "Insect" is defined as "any of the numerous small invertebrate animals generally having the body more or less obviously segmented, for the most part belonging to the class insecta, comprising six-legged, usually winged forms, as for example, beetles, bugs, bees, flies, and to other allied classes of arthropods whose members are wingless and usually have more than six legs, as for example, spiders, mites, ticks, centipedes, and wood lice." 7 U.S.C. § 136(o).

12.      With two exceptions, it is unlawful for any person in any state to distribute or sell to any other person a pesticide that has not been registered under FIFRA. 7 U.S.C. § 136a(a); 7

4

U.S.C. § 136j(a)(1)(A). Those two exceptions, not applicable in this case, include the transfer "from one registered establishment to another registered establishment operated by the same producer solely for packaging at the second establishment or for use as a constituent part of another pesticide produced at the second establishment;" and "the transfer is pursuant to and in accordance with the requirements of an experimental use permit." *Id.*

13.     FIFRA defines "distribute or sell" to include not only actual sale or distribution of a pesticide, but also the act of offering a pesticide for sale. 7 U.S.C. § 136(gg); 40 C.F.R. § 152.3.

14.     Applicable regulations provide that a substance is considered to be intended for a pesticidal purpose, and thus requiring registration if, "[t]he person who distributes or sells the substances claims, states, or implies (by labeling or otherwise) . . . that the substance can or should be used as a pesticide; or . . .[t]he person . . . has actual or constructive knowledge that the substance will be used, or is intended to be used for a pesticidal purpose." 40 C.F.R. §152.15.

15.     EPA's FIFRA registration process is detailed, and applicants are required to submit a substantial amount of information to the EPA in support of a request for registration. Items of information that must be submitted in support of an application to register a pesticide include the complete formula of each pesticide for which registration is sought, including the identity of its active and inert ingredients; all proposed labeling for the pesticide; and a statement of all pesticidal claims to be made for the pesticide. 7 U.S.C. §136a(c); 40 C.F.R. § 158.155; 40 C.F.R. § 152.50(e).

16.     To ease the regulatory burden, EPA exempted some pesticides from registration, specifically, those products deemed to be of minimum risk based on a specified list of active and inert ingredients. 40 C.F.R. § 152.25. If a product's ingredients include only items from the

5

specified active and inert ingredients, then the producer does not need to register her/her product. Imidacloprid is not listed as one of the active ingredients permitted in exempted minimum risk pesticide products. 40 C.F.R. § 152.25. However, cedarwood oil, lemongrass oil, sesame oil, citric acid, sodium chloride, and sodium lauryl sulfate are listed as exempted active ingredients. *Id.* Similarly, inert ingredients such as glycerin, citric acid, sodium citrate, Vitamin E, and edible fats and oils (such as polyglyceryl oleate and ethyl lactate), may be included in the product without risk of losing the exempted status. *Id.*

17.     It is also unlawful for any person to sell or distribute to any other person a pesticide that is "misbranded." 7 U.S.C. § 136j(a)(1)(E). A pesticide is "misbranded" under FIFRA if, among other things, its container does not have a label bearing the pesticide's registration number; or one with labeling that bears any statement, design, or graphic representation relative to the pesticide or its ingredients, which is false or misleading. 7 U.S.C. § 136(q)(1)(A). *See also* 40 C.F.R. 156.10 (*Labeling requirements*).

18.     Under FIFRA, it is a misdemeanor criminal offense to knowingly violate any provision of the statute. 7 U.S.C. § 136l(b).

19.     As relevant here, Imidacloprid is a patented chemical, manufactured by Bayer CropScience, and is marketed as "pest control, seed treatment, an insecticide spray, termite control, flea control, and a systemic insecticide." *See* https://pubchem.ncbi.nlm.nih.gov/compound/Imidacloprid. Bayer CropScience holds EPA Registration No. 264-755. Imidacloprid Technical Insecticide, *available at* https://www3.epa.gov/pesticides/chem_search/ppls/000264-00755-20151022.pdf. Bayer

6

CropScience's product contains 98% Imidacloprid. *Id.* The accompanying label/warning notes that Imidacloprid Technical is intend for formulation into specified end use products. *Id.* [1]

20. Anyone who wants to sell an end use pesticide product containing Imidacloprid must register that end use pesticide product with EPA or a delegated State. *See* 7 U.S.C. § 136a(a).

## FRAUD STATUTES

21. The federal mail fraud statute provides, in pertinent part:

> [w]however, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representation, or promises . . . places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341.

22. The federal wire fraud state provides, in pertinent part:

> [w]however, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or cases to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

---

[1] Another manufacturer registered its Imidacloprid Technical product as well, securing EPA Reg. No. 83558-34. *See* Imidacloprid Technical Data Sheet (June 20, 2016), *available at* https://www3.epa.gov/pesticides/chem_search/ppls/083558-00034-20160620.pdf. Its accompanying label/warning notes that "[f]ormulators using this product are responsible for obtaining EPA registration for their formulated product." *Id.*

7

## PROBABLE CAUSE

23.     In November 2018, NCDA&CS received a citizen complaint alleging that she purchased a flea control product on eBay which made her dog sick with symptoms of trembling and salivating for several hours. The citizen noted that her order "came in a blue container with what appears to be a homemade label on it. The label states 'Blue Flea Control imidacloprid (9.1%) pyriprofen (.46%) other ingredients (90.44%).'"

24.     The complainant also sent a screenshot from the eBay feedback page for the seller. Two posted feedbacks noted as follows:

    a. "My cat died from this, the other very sick, 2k vet bill. Seller inst replying."

    b. "Made my dogs very sick, trembling, shaking salivating for 5 hours. Scary BEWARE."

25.     Based on the information provided and believing it might involve the sale of an unregistered product, NCDA&CS inspectors located and interviewed an individual named "W.R." regarding the re-packaging and sale of pesticides. During the interview, "W.R." told the inspectors that his ex-girlfriend Melissa Cox ("COX") was re-packaging and selling a flea treatment on Amazon and eBay.

26.     NCDA&CS Inspector Steven Gatton searched their agency records and found that on October 6, 2010, Inspector Gatton had interviewed COX regarding her sale of unregistered pesticides on eBay. COX told Inspector Gatton she did not know that she was breaking any laws by diluting and using the products or selling the products on eBay. She also said that she would not sell any product for flea control in the future. However, according to "W.R.," COX restarted the online pesticide sales in 2011 with no repercussions so he did the same. "W.R." claimed that as of December 3, 2018, he had disposed of all the product he had and had no intention of selling it again.

8

27.     In January 2019, NCDA&CS referred the case to EPA-CID. In February of 2019, EPA-CID opened an investigation into potential violations of FIFRA based on illegally re-packaging and selling pesticides to the public via the internet on Amazon. EPA-CID thereafter sought and received information from Amazon. The information confirmed that COX was selling a flea treatment under the product name of "Blue Bottle Advanced/Deer Paw."

### SEPTEMBER 4, 2019, CONSENT SEIZURE AND INTERVIEW OF COX

28.     On September 4, 2019, EPA-CID Special Agents Billy Jurison and Brandon Foreman went to 5202 Robin Lane, Randleman, North Carolina (COX'S RESIDENCE) to locate COX in reference to information that she was selling an unregistered pesticide via the internet in violation of the FIFRA. While knocking on the front door, one of the agents observed, in plain view outside on the front porch to the left of the front door, a bag containing several packages that had pre-paid postage labels. The agent saw, again in plain view, that the packages listed the name "Blue Bottle Flea" as part of the return address. Upon information and belief, the agents believed the packages contained the unregistered pesticide. At approximately 1200 hours, a white female opened the front door to the COX'S RESIDENCE and identified herself as Melissa Cox.

29.     COX agreed to speak with the EPA-CID agents about the flea control she was selling and provided the following information:

- She had lived the residence for eight years.

- She did not remember inspectors with the state of North Carolina speaking with her in 2010 and telling her to stop selling the flea control.

- She learned on-line how to make flea treatment specifically, from eBay.com.

- She explained that she bought the pesticide Imidacloprid from a website called Alibaba.com and then had it shipped to her. Once received, she mixed the chemical with water and put her own label on the bottles.

9

- She admitted to still selling on eBay.com but not Amazon.com because Amazon.com stopped her from selling.

- She initially claimed that each bottle sold for between $30 to $50. She later changed those figures to $100 to $200. She claimed she made around $1,000 a month.

- She admitted that the packages on the front porch contained bottles of the flea control that she mixed.

- She confirmed that she received payment for her sales through PayPal.com.

- She a stated that she has more of the flea control in her residence.

- She stated she did not keep records pertaining to the flea control.

- She confirmed that her telephone number was (336) 471-7205.

- She told agents she was willing to give him the additional bottles in the house and that she had "barely any" of the Imidacloprid left.

- She stated that she ordered Imidacloprid through email or sends a message through Alibaba.com and received it from Turkey. The shipments of Imidacloprid she would receive from Turkey would be claimed as pet products or flea control.

- She stated that she had been selling the flea control for a couple of years. She stated she sold the product on Amazon.com as, "Dear Paw" or "Blue Bottle Flea." She said that at first, she used the eBay.com assigned username then changed it to "Blue Bottle Flea".

- She said she purchased from Shanghai Seno Greatland Industrial Company (unsure of correct spelling) and later provided the email for a Zhengzhou Panpan Chemical Co., Ltd.

- She occasionally shipped product internationally and that her international shipments would list either pet products or flea treatment.

- Her email address was mycaseydances@yahoo.com.

30.     Law enforcement advised COX that she cannot sell the flea control and COX

gave consent for SA Jurison to take the flea control bottle.

10

31.     COX then explained that she wanted to go through the packages on the front porch to figure out which ones were flea treatment. COX stated flea control was a topical solution. COX showed agents what the flea treatment bottle looked like and stated that she bought the labels on-line. The flea treatment bottle was a small blue in color bottle bearing a label with the name "Blue Bottle Advanced Flea Control," on it. Below are pictures of the bottle and directions COX showed law enforcement while they were at the COX'S RESIDENCE on September 4, 2019:





32.     During the September 4, 2019, visit to COX's residence and the subsequent interview of her, NCDA&CS Pesticide Inspector Sydney Ross arrived at the residence and met with SA Jurison and COX. Inspector Ross explained that the NCDA&CS would be issuing COX a "Stop Sale." Inspector Ross explained to COX that she could not repackage a pesticide. COX stated that she was getting Imidacloprid at 20% concentration and that there was no label on the bottle. Inspector Ross told COX it is illegal to repackage any animal medical supplies or solutions. Inspector Ross asked COX if she would bring out any Imidacloprid that she still had. COX brought out a white-colored plastic bottle with no label or markings. *See* pictures below. COX stated that is the way she received the Imidacloprid. Inspector Ross asked COX to voluntarily surrender the bottle of Imidacloprid which COX did.

12



## THE ENSUING INVESTIGATION

33.     On September 23, 2019, SA Jurison, received an email from John Allran, Environmental Toxicologist, NCDA&CS-Structural Pest Control & Pesticides Division. NCDA&CS analyzed the three samples collected from COX on September 4, 2019, and found each sample to contain Imidacloprid.

34.     Thereafter, law enforcement reviewed business records associated with COX which were obtained from Amazon, eBay, and PayPal, including documents related to individual transaction/sales of a Blue Bottle Flea through those platforms. Between January 2, 2016, and April 24, 2019, COX sold 4,460 bottles of Blue Bottle Flea on Amazon, with an estimated retail sale value of $179,962.63. During that same timeframe, COX sold 3,000 bottles of Blue Bottle Flea on eBay, with an estimated retail sale value of $115,704.87. Additionally, the records from Amazon, eBay, and PayPal showed COX used the United States Postal Service, and other carriers, to ship bottles to numerous states, US territories, and internationally. At the time of

13

those sales, COX did not possess a NCDA&CS pesticides permit. Amazon, eBay, and PayPal all transmit wire signals in interstate or foreign commerce.

35.     However, in or about February 2020, "Melissa Cox" submitted an Application for Registration of New Pesticide Product to NCDA&CS on behalf of "DFC" with a stated business address of COX'S RESIDENCE with an email address of discountfleacontrol@yahoo.com and a phone number of 336-471-7205. The declared brand name was "Blue Bottle Advance Flea Treatment for Dogs and Cats." The proposed label with the application was:



The proposed label listed the active ingredients in the flea treatment as cedar oil, sodium lauryl sulfate, lemongrass oil, and sesame oil. The proposed label further lists the inert ingredients as water, polyglyceryl oleate, glycerin, sodium chloride, ethyl lactate, sodium citrate, citric acid, and vitamin E." Imidacloprid is not listed.

36.     All of the ingredients listed by COX are listed as active or inert ingredients falling within EPA's minimum risk pesticide exemption. *See* Paragraph 16 above and 40 C.F.R. 152.25.

14

37.     Based upon COX's representation of the active and inert ingredients on her proposed product label above (such representation omitting the presence of Imidacloprid in Blue Bottle Advance Flea Treatment), NCDA&CS determined her product to be a "minimum risk pesticide" as defined by 40 C.F.R. §152.25. *See* Paragraph 16 above. As such, NCDA&CS determined that her product was exempt from federal registration. However, North Carolina requires registration even for minimum risk pesticides, and on March 30, 2020, NCDA&CS granted her North Carolina Identification Number 20200467.

38.     According to Lee Davis, Pesticides Registration Manager at NCDA&CS, had COX properly disclosed there was Imidacloprid in the product, it would have not qualified for a minimum risk pesticide exemption. Rather, if the presence of Imidacloprid had been disclosed, NCDA&CS would have been denied the application until she secured an EPA Registration Number for her product.

39.     NCDA&CS required the following addition to COX's product label: "This product has not been registered by the United States Environmental Protection Agency. DFC represents that this product qualifies for exemption from registration under the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA)." By doing so, NCDA&CS placed the burden on DFC (COX's business) to ensure that the product fell within the minimum risk pesticide exemption.

40.     EPA maintains the EPA Pesticide Product and Label System which provides pesticide products and labels that have been accepted by the EPA under FIFRA. A search of the EPA Pesticide Product and Label System (PPLS) for "imidacloprid" revealed 1,809 registered products. The PPLS search displayed negative results for Blue Bottle Flea, Advanced Blue Bottle Flea, Blue Bottle Flea Control, DFC, Discount Flea Control, and COX.

15

41.     In June 2020, COX received a target letter from the U.S. Attorney's Office for the Middle District of North Carolina. She hired counsel who received details regarding the alleged criminal conduct from government counsel. Those discussions continued through early 2022.

42.     On or about July 7, 2021, NCDA&CS received a 2021 renewal application for Blue Bottle Advance Flea Treatment for Dogs and Cats. The renewal application listed the responsible party as COX, a business name of DFC, a business mailing address of COX'S RESIDENCE, business telephone number of (336) 471-7205, and email as mycaseydances@yahoo.com. The renewal application makes clear that the applicant must disclose a copy of any revised labels. COX did not submit a revised label. NCDA&CS received a similar renewal application in 2022, with the same contact information and no proposed changes to the product label.

43.     EPA-CID continued its investigation and learned that COX was continuing to sell a flea treatment online.

44.     Between September 19, 2022, and December 16, 2022, law enforcement made four undercover purchases of nine bottles of Blue Bottle flea treatment product via Amazon, eBay, and PayPal. The product was shipped to addresses in North Carolina, South Carolina, and Colorado. The packages bore the following return mailing addresses:

    a.  Melissa Cox
        5202 Robin Ln
        Randleman NC  27317

    b.  BLUEBOTTLEFLEA@GMAIL.COM
        PO Box 1280
        Greensboro, NC 27214

    c.  BBF
        PO Box 1218
        Greensboro, NC 27419

16

d. BLUEBOTTLEFLEA@GMAIL.COM
PO Box 1280
Greensboro, NC 27214

45.     The shipments were then sent for analysis at the EPA, National Enforcement Investigations Center (NEIC). NEIC advised preliminary findings showed all nine samples received contained Imidacloprid. NEIC employees stated Imidacloprid is an EPA registered pesticide. See below chart.

| Date of purchase | Location of purchase | Number of Bottles | Size | Amount | NEIC results |
|---|---|---|---|---|---|
| 19-Sep-22 | Amazon | 2 | 30mL | $125.94 | Imidacloprid |
| 22-Sep-22 | eBay | 2 | 30mL | $120.39 | Imidacloprid |
| 16-Dec-22 | Amazon | 2 | 30mL | $117.98 | Imidacloprid |
| 16-Dec-22 | PayPal | 3 | 30mL | $165 | Imidacloprid |

46.     I also learned that on November 9, 2022, Amazon customer with initials "S.G." purchased Blue Advanced Flea Control Treatment Medicine Kit, Dogs, Cats 30ml Multi-pet. After using the product, "S.G." posted the following review: "I used this product and followed the directions and both my cats experienced massive hair loss in clumps to the point they went to the vet! I dint [sic] recommend this for cats!"

47.     On February 23, 2023, I received the finalized NEIC Criminal Investigation Report for Blue Bottle Flea, NEIC Project number RP2057. NEIC stated that Imidacloprid was present in all samples received. NEIC noted the 30.0 milliliter blue glass bottles were labeled with listed active ingredients of "cedar oil, sodium lauryl sulfate, lemongrass oil, and sesame oil." The labels also showed the email address as discountfleacontrol@yahoo.com. NEIC provided photographs of the bottles and the labels:

17





Imidacloprid is not listed on the labels.

48.   Based on the investigation here, I know the following:

   a. COX was selling items electronically on eBay and Amazon and receiving payments for items via PayPal.

   b. COX's phone number was (336) 471-7205

      i. COX registered the phone number (336) 471-7205 with eBay on March 9, 2014.

18

ii. COX used this same number when shipping and receiving items from eBay transactions.

iii. Amazon records showed COX registered the phone number (336) 471-7205 on December 12, 2017, as "Melissa Cox," again on February 13, 2018, as "M Cox" and was still the confirmed phone for her as of August 8, 2019.

iv. Records from PayPal showed COX registered with various email addresses and phone numbers dating back to October 7, 2009, including (336) 471-7205.

v. On COX's pesticide registration application to North Carolina for Blue Bottle Advanced Flea Treatment for Dogs and Cats, she used the phone number (336) 471-7205

c. COX used the email addresses:

i. bluebottleflea@gmail.com

ii. discfc1@gmail.com

iii. advancedbluebottle@gmail.com

iv. mycaseydances@yahoo.com

v. discountfleacontrol@yahoo.com

vi. discfc1@yahoo.com

vii. bounceparky@yahoo.com

49.     On February 28, 2023, a law enforcement database check on the phone number (336) 471-7205 showed the mobile carrier as T-Mobile and the registered user as COX at 5202 Robin Lane, Randleman, North Carolina.

50.     As of May 8, 2023, Blue Bottle Advance Flea Treatment for Dogs and Cats continues to be advertised for sale by PetsCo on Amazon.com. The "detailed seller information" states that the seller is "Melissa Cox" with a business address of COX'S RESIDENCE.

51.     On May 16, 2023, a federal search warrant was executed at COX's RESIDENCE. Law enforcement seized additional evidence online of sales, and shipping of pesticides in violation of FIFRA.

52.     On September 6, 2023, NEIC released NEIC Criminal Investigation Report NEIC2057R02 containing analysis results of samples collected from COX'S RESIDENCE during the search warrant in May 2023. NEIC collected seven samples from various locations in COX'S RESIDENCE. Of the seven samples collected, six contained Imidacloprid at the 8.7 percent weight by weight or greater.

53.     During November 30, 2023, through December 7, 2023, a partial review of was conducted of COX's computer which was imaged during the execution of the search warrant on May 16, 2023. COX had photographs on her computer of Blue Bottle Advanced Flea Treatment with the email address discountfleacontrol@yahoo.com, bottles of Blue Bottle Flea Advanced Flea Treatment for sale, eBay sales, shipping receipts, customer comments and mixing instructions. Also contained in the photographs was a Notice of Infringement filing by COX using email discountfleacontrol@yahoo.com, to eBay for someone selling a product similar to her Blue Bottle Flea. Additionally, one photograph contained the picture of a Trademark Application by COX for Blue Bottle Flea Control with the email address of discountfleacontrol@yahoo.com. The photographs also showed the Blue Bottle Flea Advanced Flea Treatment with the label with the email address discfc1@yahoo.com. One photograph contained the FaceBook review of Blue Bottle Flea Treatment with the account mycaseydances@yahoo.com. Documents contained in the computer showed Amazon and PayPal sales records to COX and PetsCo for Blue Bottle Flea, Blue Bottle Advanced Flea Treatment, and Blue Bottle Advanced Flea Control. Also contained on the computer were

20

shipping receipts to various individuals with a return address of COX's RESIDENCE. Additionally, COX also used the return address of PO Box 120, Laurel, Maryland, 20707. However, the emails associated with these email accounts are not on COX's computer because they are stored by Yahoo! Inc.

54. Based on the foregoing, there is probable cause to believe that COX produced an unregistered pesticide at her residence, and that she sells/sold such product through online sites such as Amazon, eBay, and PayPal, while using a Yahoo email account for her business. In addition, there is probable cause to believe that COX sold and distributed to other persons a pesticide product bearing a false and misleading label, and those sales originated from the Yahoo email addresses.

## BACKGROUND CONCERNING EMAIL

55. In my training and experience, I have learned that Yahoo! Inc. provides a variety of on-line services, including electronic mail ("email") access, to the public. Yahoo! Inc. allows subscribers to obtain email accounts at the domain name yahoo.com, like the email account[s] listed in Attachment A. Subscribers obtain an account by registering with Yahoo! Inc. During the registration process, Yahoo! Inc. asks subscribers to provide basic personal information. Therefore, the computers of Yahoo! Inc. are likely to contain stored electronic communications (including retrieved and unretrieved email for Yahoo! Inc. subscribers) and information concerning subscribers and their use of Yahoo! Inc. services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

21

56. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

57. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

58. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically

22

retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

59.    As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent

23

via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

60.     Based on the forgoing, I request that the Court issue the proposed search warrant.

61.     Pursuant to 18 U.S.C 2703(g) the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by service the warrant on Yahoo! Inc. Because the warrant will be used on Yahoo! Inc., who will then compile the requested warrant at any time in the day or night.

62.     Based upon training, experience, and the facts of this investigation, I submit that there is probable cause to believe that violations of 7 U.S.C. § 136 et seq., and 18 U.S.C. §§ 1341 and 1343 occurred, and that evidence, fruits, and instrumentalities of such violations will be found on the Yahoo! Inc. accounts.

/s/ Ryan Baker
Affiant, Ryan Baker
Special Agent
United State Environmental Protection Agency
Criminal Investigation Division


On this day, the applicant appeared before me by reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

01/25/24

The Hon. L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina

24

**ATTACHMENT A**
DESCRIPTION OF ACCOUNTS TO BE SEARCHED

The warrant applies to information associated with mycaseydances@yahoo.com, discountfleacontrol@yahoo.com, discfc1@yahoo.com, and bounceparky@yahoo.com, that is stored at the premises owned, maintained controlled, or operated by, Yahoo! Inc., headquartered at 701 First Avenue, Sunnyvale, California, 94089.

25

## ATTACHMENT B
## PARTICULAR THINGS TO BE SEIZED

I.      **Information to be disclosed by Yahoo!, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on April 28, 2023, and December 4, 2023, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A.

a.      The contents of all emails associated with the account from November 1, 2018, to January 19, 2024, including stored or preserved copies sent to and from the account, draft emails, the source destination addresses associated with each email, the date and time at which each emails was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the accounts were created, the length of service, the IP address used to register the accounts, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit card, debit card, or bank account number);

c.      The types of service utilized;

d.      All records or other information stored by an individual using the accounts, including address books, contact and buddy lists, calendar data, pictures, and files; and

26

e.    All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken. The Provider is hereby ordered to disclose the above information to the government within two weeks of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence, fruits, and instrumentalities of violations of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, as well as violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), those violations involving MELISSA DAWN COX and occurring after November 1, 2018, up through and including January 19, 2024, including, for each account or identifier listed on Attachment A, in the form of the following:

(a) Records referencing the production, distribution, and sale of an unregistered pesticide or unregistered pesticide product or a pesticide that was "misbranded," that is, a product bearing a false and misleading label, including but not limited to, sales information, sales receipts, customer information, shipping information and labels, for sale ads, pictures of items for sale, communications related to the purchase of Imidacloprid, cedar oil, sodium lauryl sulfate, lemongrass oil, and sesame oil, polyglyceryl oleate, glycerin, sodium chloride, ethyl lactate, sodium citrate, citric acid, and vitamin E.

(b) All communications with the North Carolina Department of Agriculture and Consumer Services referencing the pesticide program in North Carolina, including but not limited to, the issuance of registered pesticides numbers to pesticides being produced in the state and any enforcement actions.

27

(c) Evidence indicating how and when the email account was accessed or used, at the time of the creation of the records or communications subject to seizure under this warrant; and

(d) Records referencing the identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Yahoo, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Yahoo. The attached records consist of _____

**[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Yahoo, and they were made by Yahoo as a regular practice; and

b.      such records were generated by Yahoo's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Yahoo in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Yahoo, and at all times pertinent to the records certified here the process and system functioned properly and normally.

29

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                     Signature

.

.

30